```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION
```

ABELARDO ALONSO, ET AL.,

    Plaintiffs,

v.                                    Case No. 8:17-cv-238-T-33MAP

BANK OF AMERICA, N.A.,

    Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Plaintiffs' Motion to Remand and Memorandum in Support (Doc. ## 6, 7), filed on February 1, 2017. Defendant Bank of America responded on February 15, 2017. (Doc. # 21). For the reasons that follow, the Motion is denied.

**I.  Background**

Plaintiffs, thirty individuals and couples in total, are all Florida citizens who attempted to obtain mortgage loan modifications from their loan servicer, Bank of America, through the federal Home Affordable Modification Program (HAMP). (Doc. # 2 at ¶¶ 1, 6). But, as part of a fraudulent scheme to increase foreclosures and the servicing fees it could then collect, Bank of America allegedly delayed reviewing Plaintiffs' loan modification applications, charged

1

them fraudulent fees, and ultimately did not approve their applications. (Id. at ¶¶ 18-34; 591-611). Plaintiffs subsequently lost their homes in foreclosure proceedings. (Id. at ¶¶ 51, 70, 89, 108, 128, 144, 162, 180, 198, 217, 235, 254, 273, 292, 311, 330, 349, 368, 387, 406, 424, 442, 460, 478, 496, 514, 532, 550, 568, 586).

Plaintiffs filed their 119-page Complaint in state court on December 30, 2016, asserting two claims against Bank of America: Count I for common law fraud and Count II for violation of Florida's Deceptive and Unfair Trade Practices Act (FDUPTA), Fla. Stat. § 501.201 et seq. (Id. at 115-116).

Plaintiffs seek compensatory damages, as well as treble damages and attorney's fees for the FDUPTA claim. (Id. at 119). Regarding their actual damages, Plaintiffs allege that:

> As a direct and proximate cause of the knowing misrepresentations by BOA described in the Complaint, Plaintiffs suffered damages including but not limited to their time spent, the costs for sending their HAMP applications on multiple occasions when BOA had no intention of reviewing it, the loss of time spent sending and re-sending the HAMP application, damage to their credit, **the loss of their home and the equity in that home, the loss of future equity in the home** as well as the loss of some or all of the funds paid to BOA for trial payments for which BOA applied to fraudulent inspection fees, late fees and wrongful fees for which BOA applied their trial payments and profited.

(Doc. # 2 at ¶ 599)(emphasis added). Plaintiffs reiterate:

2

> The policies, acts, and practices by BOA alleged herein were intended to result and did result in the loss of money for mail, fax Fed Ex and hand delivery and time spent by Plaintiffs in sending applications and financial documents to BOA, when BOA had no intention of processing the applications, damage to their credit, **the loss of their home and the equity in that home, the loss of future equity in the home** as well as the loss of some or all of the funds paid to BOA for trial payments for which BOA applied to fraudulent inspection fees, late fees and other wrongful fees for which BOA applied their trial payments and profited. These losses were a direct result of BOA's purposeful scheme to deceive the Federal Government in order to increase the BOA's profits by avoiding the directives and requirements of HAMP.

(Doc. # 2 at ¶ 610)(emphasis added).

Bank of America removed the case to federal court on January 30, 2017, on the basis of both diversity and federal question jurisdiction. (Doc. # 1). Plaintiffs subsequently filed their Motion to Remand and Memorandum in Support (Doc. ## 6, 7) on February 1, 2017, arguing that their claims do not arise under federal law and that the amount in controversy requirement for diversity jurisdiction has not been met. Bank of America responded on February 15, 2017. (Doc. # 21). The Motion is ripe for review.

## II. <u>Discussion</u>

When jurisdiction is premised upon diversity of citizenship, 28 U.S.C. § 1332(a) requires complete diversity

of citizenship and that "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." Removal statutes are strictly construed against removal. Shamrock Oil & Gas Co. v. Sheets, 313 U.S. 100, 108 (1941). Any doubt as to proper subject matter jurisdiction should be resolved against removal. Butler v. Polk, 592 F.2d 1293, 1296 (5th Cir. 1979).

The removing defendant has the burden of establishing the existence of federal jurisdiction by a preponderance of the evidence and the removing party must present facts establishing its right to remove. Williams v. Best Buy Co. Inc., 269 F.3d 1316, 1319 (11th Cir. 2001). If "the jurisdictional amount is not facially apparent from the complaint, the court should look to the notice of removal and may require evidence relevant to the amount in controversy at the time the case was removed." Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001). When "damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence." Lowery v. Ala. Power Co., 483 F.3d 1184, 1208 (11th Cir. 2007).

Here, Plaintiffs do not contest that diversity of citizenship exists. Rather, they assert that Bank of America

has not established by a preponderance of the evidence that the amount in controversy exceeds $75,000. (Doc. # 6 at 2; Doc. # 7 at 4). Plaintiffs insist that Bank of America's use of their home loan amounts to establish the amount in controversy is impermissible. (Doc. # 7 at 4). They maintain that the total values of their former homes are not in controversy "because [Plaintiffs] do[] not challenge the validity of the mortgage[s] or seek an injunction prohibiting foreclosure." White v. Wells Fargo Home Mortg., No. 1:11-cv-408-MHT, 2011 WL 3666613, at *3 (M.D. Ala. Aug. 22, 2011).

But, the Complaint explicitly enumerates "the loss of their home and the equity in that home, [and] the loss of future equity in the home" as part of Plaintiffs' actual damages. (Doc. # 2 at ¶¶ 599, 610). Given Plaintiffs' statement that they lost both the equity they had accumulated and the future equity they would have accumulated if they had not lost their homes, the Court agrees with Bank of America that Plaintiffs' allegation "basically amounts to an allegation that they were injured to the tune of their property values." (Doc. # 1 at 5). For that reason, the cases cited by Plaintiffs, which state that home values should not be considered part of the amount in controversy where

5

plaintiffs do not challenge the foreclosure of their homes or the validity of their mortgages, are inapposite.

In White, White filed her action against Wells Fargo in state court, bringing numerous state claims, including fraudulent misrepresentation, breach of contract, and negligent servicing of White's mortgage. White, 2011 WL 3666613, at *1. At that time, the foreclosure proceedings against her were still pending — so, she had not yet lost her home or the accumulated or future equity in that home. Id.; see also Horace v. LaSalle Bank Nat'l Ass'n, No. 3:08-cv-1019-MHT, 2009 WL 426467, at *1-2 (M.D. Ala. Feb. 17, 2009)(remanding case that was brought before foreclosure proceedings were initiated and sought damages suffered "'as a result of alleged negligence and fraud associated with the *procurement* of the mortgage'" (emphasis added)).

Rather, in her complaint, "White [sought] damages based on Wells Fargo's alleged practice of misrepresenting the nature of White's obligations and charging unjustified fees." White, 2011 WL 3666613, at *3. The court remanded the case and noted "it is difficult to imagine that [White's] claims, which rest primarily on allegedly excessive fees that Wells Fargo charged during the five years it serviced her $150,000

6

home mortgage, are worth more than half the initial value of the mortgage." Id.

In an order citing White, the court in Hamilton v. Bank of America, N.A., No. 2:16-cv-505-WKW (M.D. Ala. Oct. 25, 2016), *sua sponte* directed Bank of America to show cause why the case should not be remanded where the plaintiff alleged damages including "the loss of equity in the home" and the "loss of future equity in the home." However, the court did not rule that remand was required, as Bank of America chose to stipulate to remand for that particular case "[w]ithout making any admissions of law or fact" about whether removal had been proper. (Doc. # 6-2; Doc. # 21 at 4 n.1). That order did not analyze the amounts of accumulated and future equity in plaintiff's home, although those were explicitly included as damages. Nor did the order actually remand the case. Thus, the Court does not find Hamilton persuasive here, given the briefing and extensive evidence of Plaintiffs' home values and equity provided by Bank of America.

Finally, in Macks v. U.S. Bank Nat'l Ass'n, No. 2:10-cv-357-MHT, 2010 WL 2976200 (M.D. Ala. July 23, 2010), the court remanded the case because the entire value of plaintiffs' property was not in controversy. The plaintiffs sought only injunctive relief — a temporary restraining order

7

seeking to enjoin foreclosure until one of the defendants proved its ownership of the mortgage. Id. at *2. Even determining the value of the injunctive relief from plaintiffs' perspective, the court determined that the value of a delay in foreclosure was "certainly worth much less than the property itself." Id.

While the Complaint here also claims damages for unjustified fees and the Motion emphasizes that Plaintiffs do not challenge the foreclosures or validity of their mortgages, the face of the Complaint reveals that the value of their homes, including the accumulated and future equity in those homes, is at issue. Plaintiffs are the masters of their Complaint, and could have foreclosed removal by drafting their pleading to allege damages below the amount in controversy requirement. Manley v. Ford Motor Co., 17 F. Supp. 3d 1375, 1379 (N.D. Ga. 2014)("Except where Congress has granted federal courts exclusive jurisdiction, plaintiffs are the 'master of the complaint and are free to avoid federal jurisdiction by structuring their case to fall short of a requirement of federal jurisdiction.'" (quoting Scimone v. Carnival Corp., 720 F.3d 876, 882 (11th Cir. 2013)(internal citation and quotation marks omitted))).

Plaintiffs chose to put the value of their lost homes in controversy and the Court will not ignore Plaintiffs' own statement of their damages in determining the propriety of removal. See Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744, 770 (11th Cir. 2010)(stating that a district court should not "suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount." (quoting Roe v. Michelin N. Am., Inc., 637 F. Supp. 2d 995, 999 (M.D. Ala. 2009))).

Therefore, the Court determines that the values of Plaintiffs' homes should be included in the amount in controversy. As evidence of the value of Plaintiffs' homes, Bank of America has disclosed the amounts of all Plaintiffs' loans, which were taken out to purchase their homes. The smallest mortgage loan was for $75,050.00, while the largest loan was for $262,150.00. (Doc. # 1 at 5). Bank of America also provides the appraised values for all but two of Plaintiffs' homes: the lowest appraised value was $100,000 for Plaintiff Plutarco Santos, and the highest appraised value was $355,000 for Plaintiff Rafael Uribe. (Doc. # 21-1 at ¶¶ 17-18). Thus, the value of each Plaintiff's home exceeded the amount in controversy threshold.

But, even if the total value of Plaintiffs' homes was not the correct measure of damages, Bank of America also provides its calculation for Plaintiffs' equity in their homes, which Plaintiffs explicitly include among their damages. (Doc. # 21 at 5). Bank of America calculates the Plaintiffs' equity by subtracting the amounts of the loan balances from the appraised values of the homes. (Id.); see In re Moulton, 393 B.R. 752, 766 (Bankr. N.D. Ala. 2008)(calculating debtor's equity in his home by subtracting the loan balance from the appraised value of the home).

Excluding the other types of damages alleged and not trebling the damages, the accumulated equity in two of Plaintiffs' homes exceeds the $75,000 threshold: Plaintiff Rafael Uribe had $97,563.81 in equity in his home, and Plaintiffs Carlos Cedeno and Maria Villacis had $159,027.88 in equity in their home. (Id.; Doc. # 21-1 at ¶¶ 18, 23). Thus, even if the Court had not already determined that the entire value of the homes were in controversy, the amount in controversy threshold was met by some Plaintiffs using the more conservative equity calculation. Therefore, the Court still could have retained supplemental jurisdiction over the claims of the Plaintiffs whose home equity did not exceed the amount in controversy threshold. See 28 U.S.C. § 1367(a)

("[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . . Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.").

The Court finds that Bank of America has established by a preponderance of the evidence that the amount in controversy exceeds $75,000, such that the Court may exercise its diversity jurisdiction.[1] Therefore, Plaintiffs' Motion to Remand is denied.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Plaintiffs' Motion to Remand (Doc. # 6) is **DENIED.**

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 21st day of February, 2017.

---

[1] As the Court has determined that it has jurisdiction over this case on the basis of diversity of citizenship, analysis of whether federal question jurisdiction exists is unnecessary.

11

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE